IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| IAS SERVICES GROUP, LLC, § | |
| *Plaintiff/Counter-Defendant,* § | |
| § | |
| v. § | |
| § | |
| JIM BUCKLEY & ASSOCIATES, INC., § | |
| JAMES BUCKLEY, INDIVIDUALLY, § | Civil Action No. 5:14-CV-180-FB |
| AND AS CO-TRUSTEE OF THE § | |
| BUCKLEY FAMILY TRUST DATED § | |
| 06/21/2014, AND BARBARA § | |
| BUCKLEY, INDIVIDUALLY, AND AS § | |
| CO-TRUSTEE OF THE BUCKLEY § | |
| FAMILY TRUST DATED 06/21/2014, § | |
| *Defendants/Counter-Plaintiffs*. § | |

**IAS SERVICES GROUP, LLC'S RESPONSE TO MOTION TO VACATE THE STAY AND REPLY IN SUPPORT OF MOTION TO STAY EXECUTION OF THE JUDGEMENT AND APPROVE BOND**

TO THE HONORABLE COURT:

Plaintiff/Counter-Defendant IAS Services Group, LLC ("**IAS**") files this Response to Defendants/Counter-Plaintiffs' (collectively, "**JBA**") Motion to Vacate the Stay to Allow Enforcement of Liability Against IAS and the Surety [ECF 340] (the "**Motion to Vacate**") and Reply Regarding IAS's Motion to Stay Execution of the Judgment and Approve Bond [ECF 337] (the "**Motion to Stay**"), and respectfully states the following:

### I.  INTRODUCTION

1. JBA's Motion to Vacate asks the Court to do the extraordinary – to allow it to execute on a portion of a judgment that is subject to appeal as of right, a right which IAS will timely exercise. JBA asks the Court to permit enforcement of the portions of the Amended Final Judgment [ECF 331] (the "**Second Judgment**") that concern JBA's counterclaims for breach of contract (including the award of attorneys fees after the first trial in this matter), while permitting

IAS to issue a bond to cover other portions of that same Second Judgment while on appeal. JBA's request that the Court slice and dice its Second Judgment should be rejected for any one of multiple reasons.[1]

2.     The Court has issued one judgment – the Second Judgment. The Second Judgment has not been severed into its component parts. It remains a single final judgment, the entirety of which IAS intends to appeal. IAS has challenged the Second Judgment's award of fees to JBA from the first trial in its Motion to Amend the Judgment, on which the Court has not yet ruled. *See* ECF 332. If the Court does not grant the relief sought in that Motion, IAS intends to challenge that failure to reduce fees on appeal. The Second Judgment – even the portion that JBA now seeks to enforce and collect – is not "final."

3.     Moreover, JBA's argument that IAS's choice of damages (as opposed to rescission) as a remedy for IAS's fraud claim somehow permits JBA to enforce a contract that was fraudulently induced is contrary to Texas law and common sense. Rescission is one remedy available, in certain circumstances, to a fraud plaintiff. But the availability of rescission in a particular case has nothing to do with whether a fraudulently induced contract can be enforced. Texas law makes clear that contracts induced by fraud cannot be enforced against an unwilling victim – regardless of whether a plaintiff seeks damages for that fraud. The logic behind that general rule is obvious in this case. A finding by the Fifth Circuit that JBA fraudulently induced the agreements would ***necessarily*** also establish that IAS conclusively proved its affirmative defenses of fraud to those counterclaims, requiring that the judgment in JBA's favor on its counterclaims be reversed.

4.     JBA effectively invites the Court to initiate a money chase. It asks for permission

---

[1] IAS also objects to the contention – in the first sentence of JBA's Motion to Vacate – that IAS's exercise of its rights to appeal a judgment is somehow "terrorism." Such overheated rhetoric is unnecessary and counterproductive.

to collect millions of dollars in contract damages from IAS today, with the concession that if IAS succeeds on appeal that those damages would have to be repaid to IAS, along with any additional damages due to IAS. The apparent desperation in JBA's grasp for cash makes clear that this money chase would significantly prejudice IAS. Whatever funds that would be dispersed to JBA through the Motion to Vacate would disappear into the wind, or at least to JBA's counsel. IAS would be forced to undertake a difficult, costly, and potentially fruitless chase to reclaim these funds if it succeeds on appeal. The federal rules, and Rule 62 in particular, are designed to avoid precisely that sort of cash scramble by staying collection of judgments until they are final.

5.      Finally, it is uncontested that IAS has posted adequate security for the Second Judgment. Any suggestion concerning the collectability of the Second Judgment, should it be affirmed, is entirely frivolous. The Court should thus allow the customary appeals process to play out, approve IAS's bond, and stay execution of the Second Judgment.

## II.     PROCEDURAL HISTORY

6.      On February 21, 2017, the Court granted IAS's unopposed motion to stay execution of the October 5, 2016 Final Judgment (the "**First Judgment**") and approve a supersedeas bond. ECF 218. The bond, which is attached to that Order, provides that IAS and the surety are "bound to satisfy in full any modification of the judgment ordered by the appellate court, or if the judgment should be affirmed only in party, to satisfy that party of the judgment affirmed, including costs, interest and damages for delay that may be awarded," up to the amount of the bond. ECF 218-1.

7.      The Fifth Circuit then reversed the Court's dismissal of IAS's fraudulent inducement claim, affirmed the Court's denial of IAS's breach of contract claim, vacated the Court's award of severance damages to JBA, and remanded for proceedings consistent with its opinion. *See* ECF 246. Contrary to JBA's suggestions, the Fifth Circuit did not explicitly affirm

the Court's judgment on JBA's counterclaims on the Seller Note or vacation pay under the Employment Agreement, leaving this Court to address the impact of the Fifth Circuit's decision (including the reversal on the fraudulent inducement claim) on remand.  *See id.*

8.  Shortly after remand, IAS moved to vacate the supersedeas bond, arguing that the reversal of the fraudulent inducement claim effectively voided the award to JBA for breach of the Seller Note and Employment Agreement.  *See* ECF 244.  JBA opposed the motion, arguing that the bond should remain in place through the new trial on remand, conceding that **"[i]f IAS proves fraudulent inducement,** *any* **modified final judgment would vitiate the contract award [to JBA]."**  ECF 248 at 6 (emphasis added).  JBA did not qualify that concession with any reference to IAS's selection of rescission as a remedy for fraud.  *See id.*  The Court later entered an Order Denying Motion to Discharge and Exonerate Supersedeas Bond (the "**Bond Order**") and left its stay of execution and the supersedeas bond in place.  ECF 255.

9.  IAS filed a writ of mandamus regarding the Bond Order.  In its Response, IAS again conceded (without reference to a rescission remedy) that JBA's "breach of contract damages . . . are only potentially subject to 'avoidance' if IAS can prove fraudulent inducement."  Ex. A at 12.  JBA further conceded that "Buckley's judgment [is] subject to potential avoidance or divestment, if and only if IAS obtains fraudulent inducement findings."  *Id.* at 13.  JBA even opposed the writ on the grounds that IAS had "an adequate remedy at law during the regular course of litigation"  that required that the bond stay in place – i.e., IAS could appeal an adverse finding by this Court on remand back to the Fifth Circuit.  *Id.* at 13-14.  The Fifth Circuit denied the writ and the bond and stay have remained in place.

10.  The Court entered its Second Judgment on May 27, 2020.  That judgment modestly increased the overall award to JBA by approximately $602,000 (including a reduction for the

4

award of fees to IAS).  Execution of that judgment was automatically stayed for 30 days, per Rule 62.  IAS filed its Motion to Stay within that 30-day period.  ECF 337.  Attached to the subsequently filed supplement to the Motion to Stay was a rider to the supersedeas bond, increasing the amount of the bond by approximately $602,000.  ECF 339.

### III.    JBA'S REQUEST TO PERMIT COLLECTION ON A PORTION OF A JUDGMENT IS IMPROPER

11. JBA has not moved to sever any portion of the Second Judgment.  It also concedes that execution of at least a portion of that Second Judgment should be stayed, pointing to the Court's award of fees from the second trial.  But it nonetheless asks the Court to permit enforcement of the rest of the Second Judgment, including portions that are the subject of pending post-judgment motions and that IAS will (if unsuccessful) challenge on appeal.  JBA's request is improper.

12. Federal Rule of Civil Procedure 62 is not complicated.  It provides that a party may obtain a stay a "***judgment*** . . . by providing a bond other security."  Fed. R. Civ. P. 62(b) (emphasis added).  The Court in this case has entered ***one*** new judgment – the Second Judgment.  IAS intends to appeal that Second Judgment, including the award of damages to JBA under the Seller Note and Employment Agreement.  Whether JBA thinks that appeal has merit is irrelevant.  The Fifth Circuit will decide whether the Second Judgment stands or falls, including whether IAS's fraudulent inducement claim requires that the awards for breach of the Seller Note and Employment Agreement be voided.  IAS has provided a bond and a rider to cover the Second Judgment.  Rule 62 thus provides that a stay of the Second Judgment should be granted.

13. The folly in JBA's attempts to carve out portions of the Second Judgment for early enforcement is made plain by JBA's own inability to define what portions of that Second Judgment are supposedly final.  In addition to damages on the Seller Note and Employment Agreement,

JBA's Motion to Vacate asks the Court to permit collection of its award of attorneys' fees to JBA after the first trial – a total of $1,630,635.39. *See* ECF 340-1 (proposed order). IAS challenged that very award in its Motion to Amend the Judgment, arguing that it was clear error for the Court not to reduce the award of fees by an amount attributable to work on the JBA's counterclaim for severance. ECF 332. The Court has not yet ruled on that motion, which could reduce that award by $244,593.81. *See id.* ¶22. If the Court does not grant the Motion to Amend the Judgment, IAS intends to challenge the Court's award of fees after the first trial (as included in the Second Judgment) on appeal, making that award anything but final.[2] JBA's inability to figure out what portions of the Second Judgment can be subject to enforcement calls into question the entire exercise.

14. The Court should instead recognize that IAS intends to appeal the Second Judgment and stay any execution of that Second Judgment pending appeal.

## IV. THE JUDGMENT ON JBA'S COUNTERCLAIMS IS SUBJECT TO REVERSAL ON APPEAL

15. JBA's argument that IAS's selection of available remedies allowed for its fraud claim enables JBA to collect damages on its counterclaims is based on a confused reading of Texas law.

16. Texas law permits a party alleging fraudulent inducement to select a remedy – generally either damages or the equitable remedy of rescission. *See Nelson v. Najim*, 127 S.W.3d 170, 176 (Tex. App.—Houston [1st dist.] 2003, pet. denied). "Rescission is a form of restitution that applies if the transaction may be still be unwound," with both parties returning whatever they received under the contract. *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 825-26 (Tex.

---

[2] As explained herein, even if the Court grants IAS's post-judgment motion and reduces the fee award, that fee award would still be subject to complete reversal if the Fifth Circuit finds in IAS's favor on the fraudulent inducement claim.

2012).  Rescission is not appropriate in every fraudulent inducement case, as it is not always possible or practical to unwind a transaction.  *Id.* at 826 (noting that rescission "is generally limited to cases in which counter-restoration by the claimant will restore the defendant to the status quo ante"). If a transaction cannot be unwound, "a plaintiff may sue for damages."  *Id.* at 825.  IAS submits that rescission would be impractical in this case given the complexity of the transaction between the parties and the time that has elapsed through this long-running litigation.

17. The fact that rescission is not feasible in a given case does not somehow give a party license to commit fraud.  Texas courts have, instead, announced the general rule that contracts are void if the plaintiff proves they were fraudulently induced, regardless of the remedy selected.  As the Texas Supreme Court explained: "As a rule, ***a party is not bound by a contract procured by fraud***."  *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998) (emphasis added); *see also Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of America*, 341 S.W.3d 323, 331-32 (Tex. 2011) ("[F]raudulent inducement is almost always grounds to set aside a contract . . . ."); *Arnold & Co. LLC v. David K. Young Consulting, LLC*, No. SA:13-CV-146-DAE, 2015 WL 268520 at *3 n.6 (W.D. Tex. Jan. 21, 2015) ("Texas law imposes a duty to refrain from using fraudulent misrepresentations to induce another to enter into a contract, and parties are not bound by contracts procured by fraud").

18. This general rule is not limited by the selection of remedies.  In other words, the controlling cases do not state that "a party is not bound to a contract procured by fraud" ***only if rescission is available as a remedy***.  There is good reason why courts have not adopted such a limited rule.  To conclude that a fraudulently induced contract could be enforced if rescission is not available – as JBA now argues – would effectively give parties free license to commit fraud, so long as the resulting contract is too complicated to be practically unwound.  That is, of course,

not the law. *See Formosa*, 960 S.W.2d at 46 ("[T]he law long ago abandoned the position that a contract must be held sacred regardless of the fraud of one of the parties in procuring it.") (quoting *Dallas Farm Mach. Co. v. Reaves*, 307 S.W.2d 233, 239 (Tex. 1957)).

19.     None of the cases cited by JBA articulate a different standard. Instead, they merely repeat the general principle that a plaintiff must select either rescission or damages as a remedy. *See Rutherford v. Exxon Co., U.S.A.*, 855 F.2d 1141, 1148 n.2 (5th Cir. 1988) (noting that a plaintiff must select a remedy); *Italian Cowboy*, 341 S.W.3d at 331 ("A contract is subject to avoidance on the ground of fraudulent inducement"); *Swain v. Wiley College*, 74 S.W.3d 143, 146-47 (Tex. App.—Texarkana 2002, no pet.) (distinguishing between contracts that are void for public policy (such as with minors) and those that are voidable if fraud is proven); *Nelson*, 127 S.W.3d at 176 (noting that the property at issue in the agreement had already been reclaimed by the defendant through foreclosure and thus "true rescission . . . was not possible," but affirming award of damages as "the functional equivalent of rescission"); *Albin v. Isotron Corp.*, 421 S.W.2d 739, 744 (Tex. App.—Texarkana 1967, writ ref'd n.r.e.) (holding that a plaintiff must choose either rescission or damages, but also concluding that the fraud pleadings "do not state a cause of action cognizable in a court of law").

20.     The necessity of the general rule against enforcing contracts induced by fraud (regardless of the remedy) is made obvious by this very case. At the first trial, IAS asserted an affirmative defense of fraud to JBA's breach-of-contract counterclaims. As JBA argued to this Court, that affirmative defense mirrored IAS's fraudulent inducement claim, which the Court dismissed under Rule 12. *See* ECF 147 ¶13 (JBA Proposed Findings of Fact and Conclusions of Law before first trial). If IAS were to succeed on its claim for fraudulent inducement, it would have proved the same facts necessary to prove its affirmative defense to JBA's counterclaims,

which would require that award on those counterclaims be vitiated.  As JBA previously conceded, "any" finding in IAS's favor on the fraudulent inducement claim must "vitiate the contract award [to JBA]."  ECF 248 at 6; *see also* Ex. A at 12-14 (arguing that the supersedeas bond should stay in place because IAS could appeal an adverse finding on remand back to the Fifth Circuit, and thus had an adequately remedy at law).

21. Indeed, even under JBA's skewed view of the law, permitting execution of the Second Judgment makes no sense.  JBA appears to concede that, if successful on appeal, IAS could recover the damages paid to JBA on its counterclaims as ***off-set damages*** to IAS.  The breach-of-contract damages awarded to JBA (i.e., the remaining payments on the Seller Note and vacation pay) would constitute out-of-pocket damages suffered by IAS as a result of being fraudulently induced into those agreements, just as the other amounts paid by IAS under the Seller Note and Employment Agreement would be included in such damages.  *See Formosa*, 960 S.W.2d at 49 ("The out-of-pocket measure allows the injured party to recover the *actual injury* suffered measured by the difference between the value of that which he has *parted with*, and the value of that which he received.") (emphasis in original) (internal quotation marks omitted).  Thus, whether the breach-of-contract damages awarded to JBA are automatically vitiated if IAS prevails on appeal (as Texas law requires) or those payments are merely added to IAS's out-of-pocket damages (as JBA suggests), the result is the same – JBA would not be entitled to those damages.  The only difference resulting from the Motion to Vacate is that IAS would be required to claw those funds back from JBA, to IAS's extreme prejudice.

22. In many ways, the parties are in the same position that they were in after this case was remanded by the Fifth Circuit.  JBA has a judgment on its breach-of-contract counterclaims.  That judgment will be vitiated if a court (now, the Fifth Circuit) concludes that IAS has proven its

9

claim for fraudulent inducement. When faced with this procedural posture in 2018, at JBA's own urging, the Court elected to maintain the supersedeas bond and its stay of execution of the judgment until IAS's fraudulent inducement claim was finally resolved. *See* ECF 255. There is no reason for the Court to change course now. As in 2018, a bond and a stay of execution of the Second Judgment would avoid dissipation of funds to which JBA would not be entitled if IAS succeeds on appeal, while providing JBA with security that its judgment would ultimately be paid if JBA succeeds on appeal. The Court should thus deny the Motion to Vacate and approve the Motion to Stay.

## V. THE SUPERSEDEAS BOND AND RIDER ARE SUFFICIENT SECURITY

23. JBA has not questioned that the amount of the supersedeas bond and rider would provide JBA with sufficient security for the Second Judgment. It has, however, suggested that there may be technical issues with the wording of the existing supersedeas bond. IAS disputes that assertion, noting that the language of the supersedeas bond is sufficiently broad to permit its application through the second appellate process. The surety evidently agrees, as it approved the rider to cover the excess liability from the Second Judgment. But if the Court believes that a new bond that is tailored specifically to the Second Judgment is necessary or preferable, IAS can readily secure such a bond.

## VI. CONCLUSION

24. For the reasons stated above and in its Motion to Stay, IAS respectfully requests that the Court deny JBA's Motion to Vacate and grant IAS's Motion to Stay. IAS also requests any further relief to which it may be entitled.

Dated: July 17, 2020.

                    Respectfully submitted,

                    **DAVIS & SANTOS, P.C.**

        By:   */s/ Jay Hulings*
                    Jason M. Davis
                    State Bar No. 00793592
                    Email:  *jdavis@dslawpc.com*
                    Jay Hulings
                    State Bar No. 24104573
                    Email:  *jhulings@dslawpc.com*
                    719 S. Flores Street
                    San Antonio, Texas 78204
                    Tel:  (210) 853-5582
                    Fax:  (210) 200-8395

                    ***Counsel for Plaintiff and Counter-***
                    ***Defendant IAS Services Group, LLC***

## **CERTIFICATE OF SERVICE**

      I certify that on July 17, 2020, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and all counsel of record will receive an electronic copy via the Court's CM/ECF system:

| | | |
|---|---|---|
| Anthony Lawrence Cannon<br>CANNON & NELMS, P.C.<br>160 S. Old Springs Road., Ste. 200<br>Anaheim, CA 92808<br>Tel: (714) 637-4400<br>Fax: (714) 637-4444<br>Email: tcannon@cannonelms.com | _____<br>_____<br>_____<br>__X__ | Overnight Mail<br>Certified Mail-RRR<br>Facsimile<br>E-mail |
| Leslie R. Robnett<br>KELLY HART & HALLMAN, LLP<br>201 Main Street, Ste. 2500<br>Fort Worth, TX 76102<br>Tel: (817) 332-2500<br>Fax: (817) 878-9280<br>Email: leslie.robnett@kellyhart.com | _____<br>_____<br>_____<br>__X__ | Overnight Mail<br>Certified Mail-RRR<br>Facsimile<br>E-mail |

***Attorneys for Defendants/Counter-Plaintiffs***

                                                                     */s/ Jay Hulings*
                                                                       Jay Hulings